2026 IL App (1st) 241677-U

FIRST DISTRICT,
SIXTH DIVISION
August 7, 2026

No. 1-24-1677

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| MICHAEL COUGHLIN and JOSE TORRES, | ) | |
| | ) | Appeal from the |
| Plaintiffs-Appellants, | ) | Circuit Court of |
| | ) | Cook County, Illinois. |
| v. | ) | |
| | ) | |
| EDDIE JOHNSON, Superintendent of Police | ) | Nos. 2020CH03939 |
| of the City of Chicago, and THE POLICE | ) | 2020CH03940 |
| BOARD OF THE CITY OF CHICAGO, | ) | |
| | ) | The Honorable |
| Defendants-Appellees. | ) | Eve M. Reilly, |
| | ) | Judge Presiding. |

_____

JUSTICE GAMRATH delivered the judgment of the court.
Presiding Justice C.A. Walker and Justice Hyman concurred in the judgment.

**ORDER**

¶ 1     *Held*:  We affirm the decision of the Chicago Police Board to discharge two officers for violating the Department's rules and a General Order where the Board's findings are not against the manifest weight of the evidence and the decision to discharge is not arbitrary, unreasonable, or unrelated to the requirements of service.

¶ 2     This appeal challenges the Chicago Police Board's final administrative decision to discharge Officers Michael Coughlin and Jose Torres for violating Chicago Police Department (CPD) rules when they fired at a moving vehicle in 2016. The Superintendent charged both

officers with violating several CPD rules, including General Order 03-02-03, which prohibits firing at moving vehicles. The officers argued they acted under the Affirmation of Protection of Life exception to protect themselves and others. After a full evidentiary hearing, the Board found they violated CPD rules and ordered their discharge. The circuit court originally affirmed the Board's decision but later reversed and remanded for consideration of disparate treatment among officers. After review, the Board reaffirmed the discharge and the circuit court affirmed. Coughlin and Torres now seek reversal and reinstatement with full back pay and benefits. For the following reasons, we affirm.

¶ 3                                I. BACKGROUND

¶ 4        Coughlin and Torres were CPD officers since 2014 and 2013, respectively. They became partners in January 2016 and were assigned to the Fourth District, which Lieutenant Andre Hasan described as experiencing high levels of violence and a surge in carjackings and shootings committed with stolen luxury vehicles. Hasan testified that officers were regularly briefed at roll call about these risks and were directed to "interdict and engage stolen vehicles" to prevent violence and homicide. Hasan described Coughlin and Torres as highly dedicated, dependable officers, and free of disciplinary issues.

¶ 5        On July 28, 2016, Coughlin and Torres responded to reports of a stolen Jaguar being pursued through a residential neighborhood in the Fourth District. Torres drove the squad car the wrong way down a one-way street to block potential escape. Moments after they stopped, the Jaguar appeared, and both officers exited the squad car. Coughlin had his firearm already drawn in anticipation of a foot pursuit. Coughlin stated that two recent incidents in which fleeing drivers nearly struck him, including one earlier the same day, heightened his perception of danger as the Jaguar approached.

¶ 6        The Jaguar accelerated toward Torres, who moved out of the way. Coughlin fired several shots, saying he believed Torres was in imminent danger. He admitted that at the time he started to shoot at the Jaguar, he had "lo[st] sight of [Torres]" and did not know where Torres was standing.  Coughlin continued shooting at the rear of the fleeing Jaguar after it passed. Torres also fired one shot as the car drove away. Both men testified that they feared the vehicle would seriously injure someone if not stopped.

¶ 7        The Jaguar advanced toward another police vehicle driven by Officers Diaz and Baker, who were approaching with emergency lights activated. The Jaguar collided head on with Diaz and Baker's vehicle. Paul O'Neal, the driver of the Jaguar, fled on foot.

¶ 8        Diaz and Baker heard gunfire as the Jaguar approached and believed it came from the Jaguar. As O'Neal fled on foot, Diaz pursued him, issued commands, and fired when O'Neal did not comply. One of Diaz's shots struck O'Neal in the back, and he later died. Civilian Office of Police Accountability deemed Diaz's shooting justified, though CPD imposed discipline for other conduct. No Board proceedings against Diaz followed.

¶ 9        Instead, the Superintendent filed charges with the Board against Coughlin and Torres for violations of CPD Rules 2, 6, and 10, and for violating General Order 03-02-03 governing the use of deadly force. General Order 03-02-03 prohibits firing at or into a moving vehicle when the vehicle is the only force used against an officer or another person, unless such force is the last resort and necessary to protect against an imminent threat to life or to prevent great bodily harm.

¶ 10       A four-day evidentiary hearing followed, which included video evidence and testimony from thirteen witnesses. Hasan praised both officers' dedication and professionalism, and family and community members described Torres and Coughlin as devoted, compassionate individuals, and exemplary officers. Both officers testified that their actions were justified under the

Affirmation of Protection of Life policy in General Order 03-02-03, which states that members will not unreasonably endanger themselves or others to comply with policy restrictions. Coughlin asserted that he fired to prevent the Jaguar from striking Torres and to prevent harm to the approaching officers. Torres testified that he fired his weapon because he believed the fleeing driver posed a danger to officers and area residents.

¶ 11    The Superintendent's expert, Chet Epperson, opined that the shooting violated policy, characterizing the incident as a property crime without imminent threat. Epperson said that none of the nine shots fired by Coughlin was justified and there was no reason for him to have unholstered his gun while still in the car and to exit the squad car and immediately start shooting. By doing so, Coughlin needlessly put Torres, the occupants of the stolen vehicle, and the other officers at risk.

¶ 12    Defense expert, Commander Patrick McGee, testified that the officers' intel, Coughlin's earlier near-miss with another vehicle, and the Jaguar's direct acceleration toward Torres created a deadly-force situation under CPD's use-of-force model and *Graham v. Connor,* 490 U.S. 386 (1989). He stated Coughlin had no alternative to prevent Torres from being struck and that both officers demonstrated controlled, trained firearms discipline. He emphasized the Affirmation of Protection of Life clause as an exception to the prohibition on shooting at moving vehicles.

¶ 13    The Board found the Superintendent proved all charges by a preponderance of the evidence. Regarding Coughlin, the Board determined that he fired nine shots at a moving vehicle in violation of General Order 03-02-03 and that several of his shots entered the vehicle or were fired toward other officers, which could have hit them. The Board concluded that his immediate decision to unholster and fire his weapon undermined his claim that his actions were solely protective in nature, that his use of force was unjustified throughout the encounter, and that his

audible frustration, including curse words caught on tape that he would be placed on desk duty as a result of the shooting, showed disregard for the life of the driver and brought discredit upon the CPD.

¶ 14   For Torres, the Board concluded that his single shot at the rear of the fleeing vehicle was unreasonable and unjustified under the same General Order. The Board found no evidence that the vehicle's occupants engaged in conduct beyond attempting to flee and determined that the situation did not present a continuing threat justifying the use of deadly force. The Board found that Torres's shot in the direction of fellow officers increased the risk to them.

¶ 15   The Board credited Epperson's testimony as "credible and compelling" and found McGee's testimony "unconvincing." It ordered the discharge of both officers, finding that their conduct demonstrated a disregard for safety and a level of judgment incompatible with continued service. The Board concluded that reinstating them would pose an unacceptable risk to both the public and other officers.

¶ 16   Coughlin and Torres sought administrative review of the Board's decision in the circuit court. The circuit court initially affirmed the Board's decision, concluding that neither officer demonstrated that the Board's findings were against the manifest weight of the evidence and that the discipline imposed was neither arbitrary nor unreasonable and was reasonably related to their conduct and maintaining public confidence in the police.

¶ 17   Coughlin and Torres moved for reconsideration, arguing that their discharge was inconsistent with the more lenient punishment imposed on Diaz and with other Board decisions, including *In the Matter of Police Officer Luigi Sarli*, No. 21-PB-2986 (Police Bd. City of Chicago, Jan. 20, 2022), where the Board imposed a two-year suspension for firing at a stolen

vehicle. The circuit court granted the motion in part and remanded for the Board to reconsider the officers' discharge in light of Diaz's discipline and the *Sarli* decision.

¶ 18 On remand, the Board again ordered the discharge of both officers. It explained that Diaz's case had not been before the Board and that neither petitioner had provided information to allow a meaningful comparison. Even so, the Board noted that Diaz had not been found to have used unjustified deadly force or to have fired toward fellow officers, thus distinguishing his conduct from that of Coughlin and Torres. The Board also found differences between this case and *Sarli*, including that Officer Sarli did not fire in the direction of other officers, was injured by the fleeing vehicle before firing, and acted in an alley rather than on a residential street.

¶ 19 Coughlin and Torres sought administrative review. The circuit court affirmed, holding that the Board's decision to discharge them was not arbitrary or unreasonable. The court explained that comparisons to other disciplinary cases are relevant only when arising from the same incident and that differing sanctions do not render an agency's decision improper unless the officers were situated identically. Coughlin and Torres now appeal.

¶ 20 II. STANDARD OF REVIEW

¶ 21 The standard of review of an administrative agency's decision regarding discharge requires a two-part analysis. See *Kloss v. Board of Fire & Police Commissioners of the Village of Mundelein*, 96 Ill.2d 252, 257 (1983). First, we consider whether the agency's factual findings are against the manifest weight of the evidence; that is, whether the opposite conclusion is clearly evident. *Robbins v. Department of State Police Merit Board,* 2014 IL App (4th) 130041, ¶ 39. In conducting this review, a court does not reweigh evidence or assess witness credibility. *Launius v. Board of Fire & Police. Com'rs. of the City of Des Plaines*, 151 Ill. 2d 419, 427-28 (1992). The Board's findings and conclusions on questions of fact are deemed *prima facie* true

and correct. See 735 ILCS 5/3-110 (West 2016). As the fact finder, the Board may accept or reject any portion of a witness's testimony, and its findings will not be disturbed merely because a different conclusion might also be reasonable. *Jimenez v. Department of Financial and Professional Regulation*, 2020 IL App (1st) 192248, ¶¶ 27, 47.

¶ 22 The second step is to determine whether those factual findings provide a sufficient basis for the Board's conclusion that cause for discharge exists. *Kappel v. Police Board of City of Chicago,* 220 Ill. App. 3d 580, 589 (1991). A police officer may be discharged only for cause, defined as a substantial shortcoming that renders the officer's continued employment detrimental to the discipline and efficiency of the service and that the law and sound public opinion recognize as good cause for removal. *Id.*; 65 ILCS 5/10-1-18 (West 2016). "An officer's violation of a single rule has long been held to be a sufficient basis for termination." *Siwek v. Police Board of City of Chicago*, 374 Ill. App. 3d 735, 738 (2007).

¶ 23 The Board's determination of cause will stand unless it is arbitrary, unreasonable, or not related to the requirements of service, even if the reviewing court might have imposed a different sanction. *Kappel,* 220 Ill. App. 3d at 589-90. The Board is in the best position to assess the impact of an officer's conduct on departmental operations. *Id.* Courts cannot reverse the discharge merely because they would decide on a more lenient sanction or find mitigating circumstances warrant a different penalty. *Launius*, 151 Ill. 2d at 436.

¶ 24 III. ANALYSIS

¶ 25 A. The Board's Decision is Not Against the Manifest Weight of the Evidence

¶ 26 Coughlin and Torres first argue that the Board's decision to terminate them is against the manifest weight of the evidence and based on factual findings contradicted by evidence in the record. We disagree.

¶ 27        Coughlin and Torres challenge the Board's finding that the Jaguar posed no imminent threat justifying deadly force, citing Torres's testimony that the vehicle "came straight at [him]." While this is partially accurate, the record reflects that Torres created this danger by stopping his squad car in the middle of the street and then exiting the vehicle into the path of the Jaguar. As it approached, Torres moved onto the curb, avoiding harm. Critically, Torres fired, and Coughlin continued firing, at the rear of the Jaguar after it had passed Torres and no threat remained.

¶ 28        General Order 03-02-03 governs the use of deadly force against moving vehicles, permitting it only as a last resort to protect life or prevent serious bodily harm. The Board, relying on video evidence and the testimony of Epperson and other officers, found such force unnecessary and rejected the Affirmation of Protection of Life defense. We cannot say these findings are against the manifest weight of the evidence.

¶ 29        Epperson, whom the Board found credible and compelling, testified that Coughlin fired his gun without knowing Torres's location, prioritizing discharge of his weapon over safety. Epperson found it most troubling that Coughlin continued firing as Diaz and Baker arrived, when he should have ceased. Epperson further stated Torres violated CPD policy by shooting at the vehicle as it fled, endangering nearby officers. He concluded Torres's shot was unjustified, as no threat warranted firing at the Jaguar.

¶ 30        Epperson explained that shooting at a moving vehicle is inherently dangerous, as an incapacitated driver turns the car into an uncontrolled missile. Torres himself acknowledged that incapacitating the driver could endanger bystanders and officers. Diaz and Baker also testified that they believed they were being fired upon and responded by ducking and crashing into the Jaguar. Because Diaz believed that O'Neal, the driver of the Jaguar, had shot at him first, he fatally shot O'Neal. Collectively, this evidence supports the Board's finding that Coughlin and

Torres's actions violated General Order 03-02-03 and heightened the danger rather than protecting anyone.

¶ 31        Coughlin and Torres also challenge the Board's rejection of the Affirmation of Protection of Life defense, arguing the Board's finding that Coughlin began firing before the Jaguar veered toward Torres, is demonstrably false based on Coughlin's testimony. However, the video tells another story, suggesting that Coughlin, who had his gun drawn, was preparing to shoot even before Torres got out of the vehicle. The Board weighed Coughlin's testimony, the testimony of other witnesses, the video evidence, and the facts surrounding Coughlin's decision to unholster his gun and shoot at the fleeing vehicle in the direction of other officers. It also viewed Torres's conduct of "boxing in" the Jaguar and then shooting at its rear a dangerous response that violated CPD rules, including General Order 03-02-03, which explicitly prohibits firing at "a moving vehicle when the vehicle is the only force used."

¶ 32        After considering all the evidence and days of testimony, the Board reasonably concluded that Coughlin and Torres could have avoided endangering themselves and others by following CPD rules and holding their fire. Instead, their conduct increased risk and violated CPD policy. Because the Board's findings are supported by the record, we must affirm. See *Raitzik*, 356 Ill. App. 3d at 824 (where "there is anything in the record that fairly supports the Board's conclusion," the Board's findings "must be sustained").

¶ 33        Coughlin and Torres make a variety of other arguments about why the Board's findings were incorrect, one of which is that the Board failed to properly apply the totality of the circumstances test set forth in *Graham v. Connor*, 490 U.S. 386 (1989). We disagree. The record makes clear the Board considered *Graham* and the totality of the evidence, including the testimony of officers, expert opinions, and body camera footage, before concluding that

Coughlin and Torres's actions were unreasonable and unjustified. In particular, the Board considered evidence that the "driver of a stolen vehicle [was] attempting to avoid apprehension," the officers had been told during a "roll call" that drivers of stolen cars would often "slow down, stop, and then exit the vehicle" when pursued by police, the rapidity of the six-second encounter, and Coughlin's stated belief that "the stolen vehicle was being used as a weapon to attempt to murder his partner." While *Graham* cautions against using a hindsight analysis, it does not require the Board to blindly accept Coughlin's subjective belief that adherence to General Order 03-02-03 would have unreasonably endangered Torres.

¶ 34        After considering all the evidence, the Board found that the actions of Coughlin and Torres were unreasonable and unjustified, and we find their conclusion is adequately supported by the record. See *Jimenez*, 2020 IL App (1st) 192248, ¶ 27 (a finding is not against the manifest weight of the evidence if there is "any evidence in the record" to support it).

¶ 35        B. Discharge is Not Arbitrary, Unreasonable, or Unrelated to the Requirements of Service

¶ 36        Next, Coughlin and Torres contend that the ultimate sanction of discharge is unduly harsh, given their exemplary service records, motivation to protect fellow officers, and various public policy considerations. These points are not insignificant, but the determination of appropriate discipline lies with the Board. A reviewing court may not substitute its judgment for that of the Board, even if it might have imposed a lesser penalty. *Launius*, 151 Ill. 2d at 436; *Sutton v. Civil Service Comm'n*, 91 Ill. 2d 404, 411 (1982).

¶ 37        Coughlin and Torres argue that the Board failed to give sufficient weight to mitigating evidence, including their long service, lack of prior discipline, military backgrounds, and positive character testimony. The record shows otherwise. The Board expressly acknowledged their commendable histories and the testimony offered on their behalf. It nevertheless concluded that

these factors did not outweigh the seriousness of their misconduct. The Board reasonably found that their unjustified use of deadly force in violation of training, safety protocols, and departmental standards, was incompatible with continued service as police officers.

¶ 38   At bottom, Coughlin and Torres challenge the Board's weighing of mitigating evidence. Illinois law is clear that a discharge decision is not arbitrary merely because mitigating circumstances exist or because a court might have viewed them more favorably. *Siwek*, 374 Ill. App. 3d at 738-39. The Board's disciplinary determinations are entitled to deference and will not be disturbed unless they are arbitrary, unreasonable, or unrelated to the requirements of service. *Sutton*, 91 Ill. 2d at 411.  Given that we are bound by the strict standard of review, we cannot say that the Board's decision to discharge Coughlin and Torres is arbitrary, unreasonable, or unrelated to the requirements of the service.

¶ 39   Reliability, judgment, and adherence to rules are essential qualities for police officers. Even a single serious violation may justify termination because discipline is fundamental to effective policing. Here, the Board found that Coughlin and Torres committed multiple rule violations involving unjustified and unreasonable use of deadly force. Their actions endangered fellow officers and the passenger in the Jaguar. They also directly contributed to Diaz's mistaken belief that the driver had fired at him, which, in turn, ultimately led to the driver's death. The Board concluded that their conduct demonstrated gross disregard for safety and a severe lapse in judgment. Misuse of firearms is among the gravest forms of police misconduct. Returning officers who have engaged in unjustified deadly force to active duty poses an unacceptable risk and undermines public confidence. The Board's decision rested on a thorough review of the evidence and a reasoned assessment of the seriousness of the violations.

¶ 40　　　Although Coughlin and Torres presented strong service records and no prior discipline, the Board reasonably determined that these factors did not excuse their conduct. Commendable past performance cannot mitigate unjustified use of deadly force and violation of CPD rules and General Order 03-02-03. Coughlin and Torres's conduct could reasonably be viewed as a substantial shortcoming rendering their continued service detrimental to the discipline and efficiency of the service and which the law and sound public opinion recognize as good cause for their no longer holding office. Because the officers' argument merely challenges the Board's weighing of evidence, and because the Board's decision was neither arbitrary nor unreasonable, we affirm the discharge.

¶ 41　　　　　　　　C. The Board Meaningfully Considered the *Sarli* Case

¶ 42　　　Coughlin and Torres contend that their discharge was arbitrary and unreasonable because, in their view, the Board treated them more harshly than it did the officer in *Sarli*, who received a two-year suspension for firing at a fleeing vehicle. This argument fails at the threshold. The Illinois Supreme Court has made clear that even when other employees have engaged in similar misconduct, "cause for discharge can be found regardless of whether other employees have been disciplined differently." *Launius*, 151 Ill. 2d at 442. Accordingly, the fact that "different individuals have been disciplined differently is not a basis for concluding that an agency's disciplinary decision is unreasonable." *Rodriguez*, 408 Ill. App. 3d at 668; *Siwek*, 374 Ill. App. 3d at 738. Comparisons are relevant only in the rare circumstance where the cases are "completely related" and involve "identical circumstances." *Launius*, 151 Ill. 2d at 442. This case is not such a circumstance.

¶ 43　　　As the circuit court correctly observed, a reviewing court "cannot find the Board's decision arbitrary *** based on sanctions imposed on another officer in an unrelated case." The

*Sarli* matter never came before this Board, involved a different agency, and therefore cannot serve as a comparator for assessing the consistency or reasonableness of the Board's own disciplinary decisions.

¶ 44 Even setting that dispositive point aside, *Sarli* did not involve identical circumstances. The Board explained that the officer in *Sarli* was not charged with firing in the direction of fellow officers. The encounter occurred in an alley with fewer civilians present and the officer fired only after the vehicle actually struck him. The incident here involved more serious risks: a bullet passed through the headrest of a seat occupied by a minor; Coughlin and Torres were found guilty of seven and eight charges respectively, including endangering multiple people and violating additional departmental rules; and their shots contributed to Officer Diaz's mistaken belief that the driver had fired at him, leading to the driver's death. No such consequences occurred in *Sarli*.

¶ 45 Coughlin and Torres attempt to minimize these distinctions by arguing that *Sarli* involved "more risk" because it occurred near a park, and the Board overemphasized the officer's injury and failed to mention that the officer shot the interior of his own vehicle. These arguments merely underscore that the circumstances are not identical. Under *Launius*, the precise degree of difference is immaterial. What matters is that the cases are not the same. Because *Sarli* involved both an unrelated incident and materially different facts, it cannot support a finding that the Board acted arbitrarily or unreasonably.

¶ 46 In short, the officers' reliance on *Sarli* is misplaced. The Board's decision was based on the seriousness of their own misconduct, not on any perceived disparity with another case. Their discharge was neither arbitrary nor unreasonable, and the Board's decision must be affirmed.

¶ 47                                    IV. CONCLUSION

¶ 48        We hold that the Board's factual findings are supported by the record and not against the

manifest weight of the evidence. Even if we would not have been led to discharge Coughlin and

Torres, the Board's findings provide a sufficient basis for their discharge. Accordingly, we

affirm.

¶ 49        Affirmed.